# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2849
_____

Carolyn Combs

*Plaintiff - Appellant*

v.

Nancy A. Berryhill,[1] Acting Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: January 11, 2017
Filed: August 21, 2017

_____

Before SMITH,[2] and KELLY, Circuit Judges, and SIPPEL,[3] District Judge.

_____

[1]Nancy A. Berryhill has been appointed to serve as Acting Commissioner of Social Security, and is substituted as appellee pursuant to Federal Rule of Appellate Procedure 43(c).

[2]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eight Circuit on March 11, 2017.

[3]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

KELLY, Circuit Judge.

Carolyn Combs appeals from the district court's order affirming the Administrative Law Judge's (ALJ) denial of her application for disability insurance benefits and supplemental security income. Because we conclude that the ALJ failed to fully and fairly develop the record, we reverse and remand for further factual findings.

## I. Background

Combs applied for disability benefits on July 2, 2012, alleging a disability onset date of May 17, 2012. She claims she is disabled as a result of the combined effects of rheumatoid arthritis, osteoarthritis, asthma, and obesity. Combs was born on December 24, 1961, and has a ninth grade education. She last worked as a housekeeper at a nursing home and was fired for talking on her cell phone.

The ALJ held a hearing on Combs' application on January 9, 2014, at which Combs and a Vocational Expert (VE) testified. Combs testified at the hearing, providing the following information. She is 5'3" tall and weighs 240 pounds. She was first told by a doctor that she had arthritis in August 2011; a little later, she was diagnosed with rheumatoid arthritis by a doctor who prescribed meloxicam for the arthritis and tramadol for pain. The medications "eased the pain whereas [she] can basically deal with it a little bit, but it didn't take the pain away, but it made it bearable a little bit." She has swelling "from [her] knees all the way down to [her] foot," which is worsened by walking and standing. She can walk for about five minutes at a time, but then she has to stop because of the pain in her lower back, knees, and feet. She can only stand for two or three minutes before having to sit down and prop up her legs, which sometimes lessens the swelling. She can sit for one

hour but spends the day changing positions. Her hands sometimes cramp up so much she cannot use them—"they just get stuck." She has pain daily, and has restless leg syndrome, which disturbs her sleep. She is prescribed amitriptyline, which helps but does not eliminate the problem.

Combs' daily activities consist mostly of sitting on her couch or walking around the house in an effort to keep her legs from stiffening. She sometimes goes to her daughter's house, but because she has trouble getting up from her daughter's couch, she prefers to sit at home where she can be more comfortable. She can shop only if a motorized cart is available. She can make herself a sandwich, but can only cook for her family if she has a chair in the kitchen, where she can sit down after standing for two or three minutes. She sometimes does dishes. She does not have the strength in her hands to wring mops or wipe surfaces, and she can no longer play with her grandchildren.

Combs presented medical records spanning the time period from July 2011 to September 2014 from St. Bernards Regional Medical Center, AR Care, Jonesboro Church Health Center, and NEA Baptist Clinic. Henry Allen, M.D., of AR Care, diagnosed Combs with rheumatoid arthritis in November 2011 and prescribed meloxicam, cyclobenzaprine, and tramadol to treat the arthritis and accompanying pain. Combs has continued treatment with various medical providers for this condition, including Dr. Allen, Beata Majewski, M.D., and Jennifer Long, APN, and these providers continue to prescribe pain medication—including toradol, hydrocodone, and tramadol—for "severe pain" due to her rheumatoid arthritis. X-rays showed severe degenerative changes in both of Combs' knees, narrowing of the joint space in her wrists and in the fingers of both hands. Treatment notes from Dr. Allen, Dr. Majewski, and APN Long reported swelling, warmth, and tenderness in Combs' hands, wrists, knees, and ankles, as well as painful range of motion, but "no acute distress" and "normal movement of all extremities." None of these medical

treatment providers offered an opinion about Combs' ability to function in the workplace.

The only medical opinions regarding Combs' residual functional capacity (RFC)[4] that the ALJ considered were from two State agency medical consultants: Robert Redd, M.D., who conducted an initial review of Combs' medical records, and Sharon Keith, M.D., who reviewed Combs' records at the reconsideration level. Neither doctor examined Combs. Dr. Redd opined that Combs was able to lift ten pounds occasionally and less than ten pounds frequently and was therefore limited to sedentary work. In Dr. Keith's opinion, Combs was capable of work at the light exertional level and could lift twenty pounds occasionally and ten pounds frequently.[5]

Following the hearing, the ALJ issued a decision on July 18, 2014, analyzing Combs' disability following the five-step sequential evaluation process outlined in 20 C.F.R. §§ 420.1520(a)–(f). At the first and second steps, the ALJ determined that Combs had not engaged in substantial gainful activity since her alleged disability

---

[4]"A claimant's RFC is what . . . he or she can do despite his or her limitations." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing 20 C.F.R. § 404.1545).

[5]Light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). To be capable of performing "light work," a claimant must also be able to stand or walk for six hours of an eight-hour work day. Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995).

-4-

onset date, and had the following severe impairments: rheumatoid arthritis, fibromyalgia, and obesity. At step three, the ALJ determined that Combs did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.

The ALJ next considered Combs' RFC. The ALJ found Combs' subjective complaints of pain not entirely credible in large part based on treatment notes made by her medical providers that she was in "no acute distress" and "had normal movement of all extremities." The ALJ gave "some weight" to Dr. Redd's opinion but concluded Dr. Keith's opinion was more consistent with the record as a whole. Relying on Combs' medical records and Dr. Keith's opinion, as well as the VE's testimony, the ALJ determined Combs had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: she can only frequently use her hands to finger and grasp; only occasionally climb ladders, ropes, scaffolds, ramps, or stairs; and only occasionally balance, stoop, kneel, crouch, and crawl. Because Combs' past work as a hotel housekeeper did not require her to perform any work-related activities precluded by her RFC, the ALJ concluded Combs was capable of performing her past relevant work and so was not disabled. Alternatively, the ALJ found that Combs could perform other jobs that existed in significant numbers in the national economy, such as a cashier or a fast food worker.

On August 6, 2015, the Appeals Council denied Combs' request for review. She sought judicial review and, on May 25, 2016, the district court affirmed the Commissioner's denial of Combs' claims. In this appeal, Combs challenges the ALJ's RFC determination.

## II. Discussion

"Because the Appeals Council declined review, the ALJ's decision is the final decision of the Commissioner." Lott v. Colvin, 772 F.3d 546, 548 (8th Cir. 2014). "The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." Id. (quoting 42 U.S.C. § 405(g)). "We review the ALJ's denial of disability insurance benefits de novo to ensure that there was no legal error and that the findings of fact are supported by substantial evidence on the record as a whole." Brown v. Colvin, 825 F.3d 936, 939 (8th Cir. 2016). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." Id. We consider the record as a whole, reviewing both the evidence that supports the ALJ's decision and the evidence that detracts from it. Id.

Combs contends the ALJ's conclusion that she had the RFC to perform light work, and therefore could return to her past relevant work as a hotel housekeeper, is not supported by substantial evidence on the record as a whole. An ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)). If the medical records received from a treating physician are inadequate to determine a claimant's disability, the regulations provide that the Commissioner will contact the treating physician to clarify. Cox, 495 F.3d at 619 (citing 20 C.F.R. § 416.912(e)). The ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports." Strongson, 361 F.3d at 1070.

Combs asserts the ALJ's RFC determination is not supported by substantial evidence on the record as a whole because there is no evidence from a treating or examining medical provider to show how her impairments affect her ability to function in the workplace. Combs contends the ALJ drew his own inferences about her functional ability from her medical reports and then relied on those inferences to

choose between the conflicting opinions of non-treating, non-examining physicians, who merely reviewed the reports of her treating physicians to form an opinion of her RFC. Faced with these conflicting opinions, Combs asserts, the ALJ should have sought clarification about her work-related limitations, either from a prior treating doctor or from a consultative doctor. Because the ALJ failed to do so, Combs argues, he did not satisfy his duty to fully and fairly develop the record.

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)). "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." Id. (quoting Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003)). "Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). On the other hand, "[t]he opinion of a treating physician is accorded special deference under the social security regulations" and is "normally entitled to great weight." Vossen, 612 F.3d at 1017 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).[6]

While we recognize that an ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped," Vossen, 612 F.3d at 1016 (emphasis omitted) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)), here, there is no opinion from a treating physician on the "crucial

---

[6]This continues to be true for Combs' claim because it was filed before March 27, 2017. See 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply."); id. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.").

issue" of whether Combs was limited to sedentary work or could perform light work. If the ALJ had accepted Dr. Redd's opinion regarding Combs' RFC, Combs would have been found disabled under rule 201.09 of the medical-vocational guidelines. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, rule 201.09. Instead, based on his interpretation of medical terms in Combs' medical records and Dr. Keith's opinion, the ALJ concluded Combs was capable of light work, and thus not disabled.

We conclude the ALJ erred in relying on his own inferences about what Combs' medical providers meant when they noted in her medical records that she was in "no acute distress" and had "normal movement of all extremities" to determine Combs' RFC. The Commissioner concedes in her brief that the notation "'no acute distress' [is not] of particular significance with a chronic condition such as [Combs'] rheumatoid arthritis." The Commissioner instead argues that the finding of "normal movement of all extremities" is inconsistent with Combs' complaints of pain. But the relevance of this finding in terms of Combs' ability to function in the workplace is not clear: Although Combs' medical providers consistently note in their treatment records that Combs has a normal range of motion, they likewise consistently diagnose her with rheumatoid arthritis, prescribe medications for "severe pain," and note "trigger point" and "joint pain with" range of motion. By relying on his own interpretation of what "no acute distress" and "normal movement of all extremities" meant in terms of Combs's RFC—instead of seeking clarification from Combs' medical providers—the ALJ failed to satisfy his duty to fully and fairly develop the record. Accordingly, we conclude remand is necessary so the ALJ may conduct further inquiry as to what relevance Combs' being in "no acute distress" and having "normal movement of all extremities" has in terms of Combs' ability to function in the workplace.

### III. Conclusion

Accordingly, we reverse and remand the case to the district court with instructions to remand to the ALJ for further proceedings consistent with this opinion.

SMITH, Circuit Judge, dissenting.

The majority holds that the ALJ failed to fully and fairly develop the record. Specifically, the majority holds that the ALJ failed to (1) seek clarification of the terms "no acute distress" and "normal movement of all extremities," and (2) obtain a treating or consultative physician's opinion on Combs's ability to function in the workplace. Because this holding misapplies our precedent, I respectfully dissent.

First, Combs argues that the ALJ failed to fully and fairly develop the record because he failed to seek clarification of the terms "no acute distress" and "normal movement of all extremities" and improperly relied on his own interpretations of these terms. Combs essentially argues that these terms were unclear and that the ALJ was duty-bound to ask the treating physicians for more information. "The ALJ's duty to develop the record, however, does not extend so far" as to necessarily require an ALJ to seek more information when an opinion is arguably unclear. *See Stormo*, 377 F.3d at 806. "The ALJ must neutrally develop the facts. He does not, however, have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Id.* (citation omitted). The medical record contains dozens of treatment notes detailing Combs's physical limitations. In this case, no crucial issue was undeveloped as to create a duty to seek additional information from Combs's treating physicians. *See KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372 (8th Cir. 2016).

Second, Combs argues that the ALJ failed to fully and fairly develop the record because he did not obtain a treating or consultative physician's opinion on Combs's ability to function in the workplace. Thus, Combs argues that the RFC is not supported by substantial medical evidence. "This misstates the governing principle." *See Harvey v. Colvin*, 839 F.3d 714, 717 (8th Cir. 2016). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir.

-9-

2004). While the RFC assessment must be supported by some medical evidence, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id.* (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).

At step four of the disability analysis—the step at which the ALJ decided this case—a disability claimant has the burden to establish her RFC. *Eichelberger*, 390 F.3d at 591. Contrary to Combs's assertion, and the majority's holding, an ALJ is not required to obtain a *treating or consultative* physician's opinion to determine whether the claimant has the RFC to perform past relevant work. Instead, our precedent permits an ALJ to rely "on a reviewing physician's report at step four when the burden is on the claimant to establish an inability to do past relevant work." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (rejecting the assertion that RFC must be supported by a treating or consulting physician's opinion, and upholding RFC supported by reviewing physician's report, other medical records, and subjective reports of claimant's mother and former employer); *see also Eichelberger*, 390 F.3d at 591–92 (holding reviewing physician's opinion sufficient to uphold RFC at step four because our holding in *Nevland*, 204 F.3d 853, which rejected RFC that relied only on reviewing physicians' reports, does not apply at step four); *Hensley*, 829 F.3d at 932 (rejecting argument that ALJ must "order a consultative examination . . . to correct [a] lack of direct opinion evidence" from a treating source); *cf. Masterson v. Barnhart*, 363 F.3d 731, 737–38 (8th Cir. 2004) (holding ALJ properly relied on non-examining physician's opinion, consulting physician's opinion, claimant's subjective complaints, and records from treating physicians in determining RFC). Thus, the majority's holding that the ALJ must obtain a medical opinion "about [Combs's] work-related limitations, either from a prior treating doctor or from a consultative doctor" directly conflicts with our precedent.

-10-

"[T]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant. Here, no crucial issue was left undeveloped; rather, [Combs] simply failed to show that she was unable to perform her past work." *See Eichelberger*, 390 F.3d at 592 (citation omitted). In determining that Combs is capable of performing light work, the ALJ reviewed and considered years of medical records, Combs's subjective testimony, materials from Combs's treating physicians, the reviewing physicians' opinions, and the testimony of the VE. As the district court noted, this evidence is capable of more than one acceptable characterization. Because I find it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings," *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quoting *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003)), I would hold that "the ALJ's conclusion under step four is supported by substantial evidence," *Eichelberger*, 390 F.3d at 591, and I would affirm the ALJ's decision.

_____