# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1124

_____

Anna M. McNamara,

               Appellant,

v.

Michael J. Astrue, Commissioner of
Social Security,

               Appellee.

*
*
*
*
*   Appeal from the United States
*   District Court for the
*   Western District of Missouri.
*
*
*
*

_____

Submitted: September 21, 2009
Filed:  January 5, 2010

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Anna McNamara appeals the decision of the district court,[1] which upheld the decision of the Commissioner of Social Security to deny her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). 42 U.S.C. §§ 1381-1383f. We affirm.

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

I.

On August 26, 2004, at the age of 18, McNamara applied for SSI benefits, alleging disability since her birth in 1985. She cited difficulties reading, spelling, writing, and counting money as evidence of her disability. McNamara had graduated from high school, but had no relevant work experience.

McNamara completed a Function Report at the request of the Social Security Administration ("SSA") in September 2004. She stated in this report that her daily routine included caring for her infant daughter, performing light housework, shopping, visiting friends, and "chat[ting]" on the computer. She indicated that she had problems with memory, completion of tasks, concentration, and following instructions. McNamara indicated no difficulties with her physical mobility or use of her hands.

On October 29, 2004, McNamara visited licensed psychologist Steven J. Adelman to verify her disability claim. Adelman noted that McNamara's speech was clear and coherent, but slightly slow. He assessed her thought processes as normal, despite signs of mild confusion. Adelman found McNamara's recent memory to be good, but noted deficits in her long-term memory and her ability to perform simple arithmetic. He administered the Wechsler Adult Intelligence Scale IQ exam, which indicated scores of 70 to 74. Adelman classified McNamara in the borderline intellectual functioning range, and concluded that she could follow simple instructions and sustain concentration in simple tasks, but could not accomplish complex tasks.

Based on Adelman's evaluation and McNamara's medical history, education, and Function Report, the SSA denied McNamara's application for benefits in November 2004. McNamara requested review of the denial by an Administrative Law Judge ("ALJ").

In preparation for her appearance before the ALJ, McNamara was evaluated by two additional medical professionals. Margaret Harlan, a licensed psychologist, examined McNamara on January 11, 2006. Harlan noted that McNamara presented herself as credible but confused, and that she appeared depressed. McNamara reported having mood swings and auditory hallucinations, and Harlan diagnosed her with bipolar disorder, psychotic disorder, and mild mental retardation. Harlan concluded that she did not know if McNamara could handle supported or sheltered employment.

On January 13, 2006, McNamara was examined by Dr. John Wy. McNamara reported to Dr. Wy that she suffered from back pain, left wrist pain and numbness, and mood swings. McNamara denied any hallucinations or significant depression, and stated that she treated her back pain with over-the-counter medication. Dr. Wy found no gross deformities in McNamara's back, although he noted lumbar muscle spasms and limitations in her forward flexion caused by her obese abdomen. He measured McNamara's weight to be 191 pounds and found her to have full range of motion in her wrists. Wy diagnosed McNamara with chronic back pain, obesity, left carpal tunnel syndrome, and learning disabilities coupled with anger control problems.

McNamara appeared before the ALJ on May 17, 2006. At the hearing, McNamara testified that she had applied for jobs without success, but she preferred not to work so that she could be with her two children, aged one and two. She stated that the primary afflictions that prevented her from working were her mood swings, auditory hallucinations, and difficulties with reading, counting, and following directions. McNamara reported that her weight had decreased to approximately 170 pounds, that she had no trouble caring for her children, and that she was not receiving treatment from doctors or taking medication.

On June 30, 2006, the ALJ determined that McNamara did not qualify as disabled under the Act, and was therefore not entitled to SSI benefits. The ALJ used

the familiar five-step sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920. At steps one and two, the ALJ found that McNamara had not engaged in substantial gainful activity since her application in August 2004, and that McNamara's borderline intellectual functioning and learning disorders in math and reading constituted severe impairments that impacted her ability to perform basic work activities.

At step three, the ALJ found that McNamara's impairments did not meet or equal an impairment in the regulations. The ALJ determined that nearly all of McNamara's IQ scores and her level of adaptive functioning weighed against a finding of mental retardation. The decision also reasoned that McNamara did not exhibit an additional and work-related limitation of function as required by the regulations. Finding step four inapplicable, because McNamara had no past relevant work, the ALJ continued to step five. After considering McNamara's age, education, medical evaluations, and residual functional capacity, the ALJ found that McNamara could perform a significant number of jobs in the national economy, including work as a machine feeder, a cleaner, a production clerk, and a printed circuit board assembler. This finding was based on the testimony of a vocational expert, who reported that an individual like McNamara was capable of a number of simple, routine jobs. Because the ability to perform jobs in the national economy precludes a finding of disability, 20 C.F.R. § 416.920(g)(1), the ALJ concluded that McNamara was not entitled to SSI payments.

In reaching this conclusion, the ALJ evaluated the medical evidence in light of McNamara's subjective allegations of pain, *see Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and determined that McNamara's testimony regarding her symptoms and limitations was not fully credible and not supported by the record. The ALJ found that McNamara's allegations at the hearing were contradicted by the conclusions of Dr. Adelman and Dr. Wy and her own Function Report.

The Appeals Council denied review of the ALJ's decision on November 27, 2007, resulting in a final decision of the Commissioner. *Van Vickle v. Astrue*, 539 F.3d 825, 828 (8th Cir. 2008). McNamara sought review by the district court. The court ruled that the ALJ permissibly concluded that McNamara's physical limitations did not rise to the degree of severity required by the regulations for a finding of disability, because her ailments did not impose a significant work-related limitation of function.

## II.

We review *de novo* a district court's decision affirming the denial of social security benefits. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). We will affirm if the Commissioner's decision is "supported by the substantial evidence on the record as a whole." *Id.* (internal quotation omitted); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). "We consider both evidence that detracts from and evidence that supports the Commissioner's decision." *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007) (internal quotation omitted). If substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome. *England*, 490 F.3d at 1019.

McNamara challenges the ALJ's finding at step three of the five-step process for determining disability. She contends that the ALJ applied incorrect legal standards and ignored substantial evidence in the record in determining that her physical and mental impairments did not meet the required level of severity to qualify as disabled due to mental retardation under 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05C ("Listing 12.05C").

Under Listing 12.05C, a claimant suffers from the required severity of mental retardation if she shows "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. This court has interpreted Listing 12.05C to require a claimant to show each of the following three elements: "(1) a valid verbal, performance, or full scale IQ score of 60 through 70, (2) an onset of the impairment before age 22, and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006).

McNamara challenges the ALJ's decision with respect to the first and third requirements under *Maresh* and Listing 12.05C. Regarding the first requirement, McNamara argues the ALJ committed legal error by failing to credit McNamara's lowest IQ scores. She next asserts that the ALJ incorrectly assessed the third requirement by failing to recognize that her alleged physical limitations, in particular her obesity, qualified as a medically determinable impairment and a work-related limitation of function. We need address only her challenge to the finding on physical limitation, because we conclude that it is dispositive.

Listing 12.05C requires McNamara to show a within-range IQ score *and* an additional and significant work-related limitation of function. *Maresh*, 438 F.3d at 899. The additional limitation need not be disabling, but it must have a "more than slight or minimal effect on [her] ability to perform work." *Sird v. Chater*, 105 F.3d 401, 403 (8th Cir. 1997) (internal quotation omitted).

On the basis of Dr. Wy's 2006 diagnosis, McNamara alleged that her limitations include her obesity, chronic back pain, carpal tunnel syndrome, and learning disabilities with anger control problems, in addition to her borderline intellectual functioning. The principal focus of her argument on appeal is obesity. McNamara contends that the ALJ's failure to discuss obesity as a potential work-

related limitation in her decision constituted legal error. McNamara points to Social Security Ruling ("SSR") 00-3p, which states that obesity is a "medically determinable impairment" that can constitute a severe impairment under Listing 12.05C, and reminds adjudicators "to consider [obesity's] effects when evaluating disability." SSR 00-3p, 65 Fed. Reg. 31,039, 2000 WL 33952015 (May 15, 2000).[2]

While obesity can impose a significant work-related limitation, substantial evidence supports the ALJ's rejection of McNamara's claim. Nothing in McNamara's medical records indicates that a physician ever placed physical limitations on McNamara's ability to perform work-related functions because of her obesity. *See Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004). Dr. Wy diagnosed McNamara as obese in his 2006 evaluation and noted limitations in her forward flexion due to her obese abdomen, but nothing in his report suggested her obesity significantly affected any work-related functions. McNamara's own Function Report also failed to identify any physical limitations caused by obesity. In this report, McNamara stated that she had no limitations lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, or climbing stairs, and nowhere in the report did she mention any other restrictions stemming from her weight.

McNamara's failure to testify at her hearing before the ALJ about any work-related limitations caused by her obesity further undermines her claim. *See Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003). Rather than offer evidence about how her obesity affected her ability to work, McNamara indicated that she had lost approximately twenty pounds in the five months between her examination by Dr. Wy and her hearing. Given that neither the medical records nor McNamara's testimony demonstrates that her obesity results in additional work-related limitations, it was not

---

[2]SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57,859, 2000 WL 628049 (Sept. 12, 2002), but the rulings are not materially different with respect to the issues in this case.

reversible error for the ALJ's opinion to omit specific discussion of obesity. *Forte*, 377 F.3d at 896-97.

McNamara mentions other alleged limitations – back pain, carpal tunnel syndrome, learning disabilities, auditory hallucinations – only in passing without developing any argument that the ALJ erred. We conclude that the ALJ's decision adequately addressed these alleged impairments, and that the decision on these points is supported by the substantial evidence on the record as a whole as described in the ALJ's opinion.

\*     \*     \*

The judgment of the district court is affirmed.

_____